# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Shawn Preston, Eric Davis, Joseph Patterson, John Rando, Jason Tatarewitz, and Ronnie D. Barrett, Jr., for themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Fluor Enterprises, Inc., <br><br> Defendant. | Civil Action No: 0:17-cv-02184-MGL |

## JOINT MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE ACTION SETTLEMENT

### I.  INTRODUCTION

Plaintiffs, Shawn Preston, Eric Davis, Joseph Patterson, John Rando, Jason Tatarewitz, and Ronnie D. Barrett, Jr., for themselves and others similarly situated ("Plaintiffs") and Defendant Fluor Enterprises, Inc. ("Defendant") (collectively the "Parties"), respectfully request preliminary approval of a settlement reached in relation to the Plaintiffs' claims brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10(1) ("SCPWA"), and for breach of contract under South Carolina law.  The settlement will resolve this matter completely.  As stated in their Motion, the Parties request that the Court:  (a) preliminarily approve the proposed settlement of the above-captioned matter; (b) conditionally certify the collective action for settlement purposes only; (c) appoint Plaintiffs as the class representatives; (d) appoint Plaintiffs' counsel as class counsel; (e) authorize

1

the prompt dissemination of the proposed class notice; and (f) enter the contemporaneously-filed proposed Preliminary Approval Order.

As outlined below, the Court should grant preliminary approval of the settlement because it is a reasonable resolution of a *bona fide* dispute under the FLSA of the claims of the putative collective action members. If the Court grants preliminary approval and conditionally certifies a collective action for settlement purposes only, the Defendant will distribute notice and consent forms to the putative collective action members. Once the period for the putative collective action members to affirmatively agree to join the litigation and participate in the settlement has run, the Parties will return to the Court for final approval of the settlement.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed their Complaint against Defendant on August 16, 2017, alleging that Defendant failed to pay overtime wages, pursuant to the requirements of the FLSA. (ECF #1.) Plaintiffs also include causes of action under South Carolina law, including breach of contract and violation of the SCPWA. (ECF #1.) Plaintiffs filed this action as a putative collective action under the FLSA, and a putative class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

In an effort to resolve this case expeditiously, Defendant agreed to and did provide Plaintiffs with extensive payroll data, and Plaintiffs' counsel interviewed similarly situated employees to investigate their claims further. After analyzing all of the data, as well as the merits of the case, the Parties participated in mediation with Frank G. Shuler, Jr., Esq., a well-respected mediator and member of the South Carolina bar, on December 15, 2017, with respect to the case. Following the mediation, the Parties engaged in extensive, arm's length settlement negotiations

and were able to reach a settlement agreement, memorialized in the Parties' Settlement and Release Agreement ("Agreement").[1]

## III. THE SETTLEMENT

### A. Settlement Terms are Fair and Reasonable

Pursuant to the terms of the Agreement, Defendant will pay up to the Maximum Settlement Amount to resolve the FLSA claims of Plaintiffs and certain putative collective action members who performed job duties similar to those performed by Plaintiffs while employed by Defendant at the V.C. Summer Nuclear Power Plant within the Welding and/or Tekla Modeler job functions from on or about April 2, 2016, to on or about July 31, 2017, and who were allegedly not paid time and one-half their regular rate of pay for hours worked in excess of forty (40) hours in one or more workweeks ("Class Members"), as identified by Defendant in Schedules A and B to the Agreement.[2]

Based on their analysis and evaluation of relevant factors, and recognizing the risks of continued litigation, including the possibility that the litigation, if not settled now, might result in no recovery whatsoever, might result in a less favorable recovery, or might result in a more favorable recovery, and the likelihood that any recovery would not occur for several years, counsel for the Parties are satisfied that the terms of the Agreement are fair, reasonable, and adequate. Plaintiffs' counsel is satisfied that this Agreement is in the best interest of the Plaintiffs.

Once the opt-in process is complete, the Class Members will review the total settlement funds available based on the Settlement Agreement. Based on the settlement funds available, each

---

[1] The Parties' Agreement will be submitted to the Court via e-mail for *in camera* review at the time of this filing.

[2] The individuals identified in Schedule A have already been retained by Plaintiffs' counsel and have agreed to the terms of the Agreement. The individuals identified in Schedule B are additional members of the putative collective action who have not yet been advised of the ability to join this lawsuit and participate in the settlement.

of the Class Members will be allocated a portion of the settlement based on a percentage of each Class Member's alleged actual damages. All Class Members will receive the same percentage of his or her alleged actual damages. The remainder, not to exceed 33% of the settlement funds available, will be allocated as attorney's fees and costs.

### B.     Notice and Opt-In Process

As discussed above, if the Court preliminary approves the settlement and conditionally certifies a collective action for settlement purposes only, the Defendant will promptly mail the Class Members identified in Schedule B to the Agreement[3] a Notice of Lawsuit and Settlement (the "Notice") (attached to the Agreement as Exhibit A) and Consent to Join Form (the "Consent Form") (attached to the Agreement as Exhibit B) informing them of the settlement and instructing them to complete and return the Consent Form to participate in the settlement. Defendant shall mail reminder Notice and Consent Forms to the Class Members identified in Schedule B to the Agreement twenty-five (25) days before the close of the Opt-In Period.

Notably, the Notice will specifically inform the recipient of his or her minimum settlement payment. *See* Agreement, Ex. A. Such "individualized" notice greatly enhances a Class Member's ability to make an "educated" decision as to whether to participate in the action. Class Members will have forty-five (45) days from the date Notice and Consent Forms are first mailed to complete and return the Consent Form if they wish to participate in the settlement ("Opt-In Period"). Because this is a collective action settlement (as opposed to a class action) only those individuals who complete and return a Consent Form will become parties to this action, receive a settlement payment, and waive any legal claims against Defendant.

---

[3] As noted above, individuals identified in Schedule A to the Agreement have already or will pursuant to the Agreement sign consent forms and are parties to the Agreement, so no additional notice or consent is required for these individuals.

4

**IV.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL**

"The FLSA's provisions are generally not subject to waiver, but a district court may approve a settlement if the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 849 (D.S.C. 2016) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). "Although the Fourth Circuit has not directly addressed what factors district courts should consider when analyzing proposed FLSA settlements, district courts tend to follow the analysis the Eleventh Circuit put forth in *Lynn's Food Stores*: (1) Is there a bona fide dispute? (2) Is the proposed settlement fair and reasonable?" *Id.*

"Courts greatly favor the settlement of cases and allowing litigants to achieve their own resolution of disputes." *Newbanks v. Cellular Sales of Knoxville, Inc.*, C/A No. 3:12-cv-1420-CMC, 2015 WL 12843763, *5 (D.S.C. Feb. 4, 2015) (unpublished, attached). "Although the district court has broad discretion in approving a settlement of a collective action, there is a 'strong presumption in favor of finding a settlement fair.'" *Id.* (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, C/A No. 1:08-cv-1310-AJT-JFA, 2009 WL 3094955, *10 (E.D. Va. Sept. 28, 2009) (unpublished, attached).

**A.     The Parties Had a *Bona Fide* Dispute Over FLSA Coverage**

In this case, a *bona fide* dispute exists as Plaintiffs allege that Defendant failed to pay them overtime wages in violation of the FLSA and Defendant denies these allegations on factual and legal grounds. *See Irvine*, 204 F. Supp. 3d at 489 (finding a *bona fide* dispute existed where plaintiffs alleged that defendants failed to pay them and other tipped employees minimum wages in violation of the FLSA, and defendants denied the allegations on factual and legal grounds). If

the Class Members ultimately prevailed in this litigation, Defendant would be faced with the prospect of a monetary verdict, as well as the obligation to pay litigation fees and costs. Similarly, if Defendant ultimately prevailed, Plaintiffs and the Class Members who join the suit face dismissal of their claims and no recovery of any kind. Accordingly, the Court should conclude that a *bona fide* dispute between the Parties exists.

### B.     The Proposed Settlement is Fair and Reasonable

To determine whether the Agreement is fair and reasonable, the Court should consider the following factors:  "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential discovery." *Id.; see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975).

Consideration of the six factors courts use in evaluating FLSA collective action settlements confirms that the Agreement is fair, reasonable, and adequate. During the litigation and settlement of this action, Plaintiffs were represented by counsel experienced in handling wage and hour collective actions. The Agreement the Parties ultimately reached was the product of arm's length negotiations between the Parties based on a review of payroll records. The Agreement provides relief to the Class Members and eliminates the inherent risks both sides would bear if the case were to continue. Given these circumstances, a presumption of fairness should attach to the proposed settlement.

The Court should bear in mind that this is not a Rule 23 class action settlement. In reviewing a Rule 23 settlement, the Court must safeguard the rights of absent class members. Here, the concern for absent class members is much less, since only those employees who have or will opt into this action will release claims against Defendant.

The six specific factors used to evaluate whether a settlement is fair and reasonable all weigh in favor of approving the Agreement.

> 1. **Extent of discovery that has taken place.**

The first factor weighs in favor of approving the settlement. While the parties have not engaged in complete formal discovery, counsel have expended considerable time exchanging pertinent data about the claims of each of the members of the putative collective action, including each member's job title, various rates of pay, hours worked, and payroll records. This has necessarily resulted in Plaintiffs' counsel committing significant amounts of time as counsel communicating and verifying Fluor's data with the individual class members, and has, in some instances, required a reassessment of Fluor's time or pay records. The parties agreed early in the life of the case that this course would be more beneficial to both sides and would more efficiently lead to a possible resolution than a course of protracted and expensive traditional discovery. With this work undertaken and the members of the putative collective action satisfied with the data Fluor shared, the parties were able to meaningfully negotiate the case, both at mediation and for two months thereafter.

> 2. **Stage of the proceedings, including the complexity, expense and likely duration of the litigation.**

Second, the stage of the proceeding, complexity, expense, and likely duration of the litigation weighs in favor of approving the settlement. This action was filed on August 16, 2017. As mentioned above, the Parties have already engaged in an exchange of pertinent data and if the

7

matter continued, the Parties would complete discovery, including dozens of depositions, and Defendant would oppose certification. Following the completion of discovery and a ruling on the motion for certification, the matter may proceed to an expensive, lengthy trial, with risks to both sides, as well as likely appeals and post-trial motions. Additionally, because Plaintiffs' claims arise under the FLSA, this case will likely involve complex legal and factual issues to be determined at trial. *See Holladay v. Burch, Oxner, Seale Co., CPA's, PA*, C/A No. 4:07-cv-03804-RBH, 2009 WL 614783, *3 (D.S.C. Mar. 6, 2009) (unpublished, attached) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981)) ("FLSA claims typically involve complex mixed questions of fact and law . . . ."). Although a number of issues remain unresolved in this litigation, the discovery conducted thus far has enabled counsel for the Parties to assess the respective strengths and weaknesses of their case and reach a conclusion that settlement under the terms set forth in the Agreement is in the Parties' best interest.

### 3.     Absence of fraud or collusion in the settlement.

The third factor also supports preliminarily approving the settlement because there is absolutely no suggestion of fraud or collusion, the settlement negotiations were conducted at arm's length with both Parties represented by experienced counsel, and the Parties were assisted in mediation by an experienced labor and employment attorney. *See Newbanks*, 2015 WL 12843763, *6 (finding no evidence of fraud or collusion where settlement was reached after extensive, *bona fide*, arm's length negotiations and mediation before an attorney with extensive experience in labor and employment law). In the absence of any evidence to the contrary, it is presumed that no fraud or collusion occurred. *See Lomascolo*, 2009 WL 3094955, *12. Here, there is no evidence that the Agreement was "affected by any improper considerations, such as undue influence, collusion, duress, intimidation, or coercion." *Newbanks*, 2015 WL 12843763, *6.

**4.     Experience of counsel who have represented the plaintiffs.**

With regard to the fourth factor, Plaintiffs' counsel is experienced in complex litigation, including multi-party and class actions, and all types of employment disputes, including wage and hour litigation, throughout South Carolina.

**5.     Opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object.**

With respect to the fifth factor, the Court is not positioned at this time to review all of the Class Members' response to the settlement since some of the Class Members have yet to be notified of the settlement. Accordingly, the Parties suggest that the Court wait until the Opt-In Period has run, and the Parties file their motion for final approval of the settlement to assess this factor.

It should be noted that 38 individuals, more than half of the putative collective action members, have already ratified the Agreement. The remaining 30 members of the putative class action, listed in Schedule B to the Agreement, will receive Notice and a Consent Form providing them the opportunity to join the settlement, or the option to forgo the settlement without waiving their legal rights.

**6.     Probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential discovery.**

The Parties disagree as to the likelihood of Plaintiffs' success on the merits in this case. However, the amount of the settlement closely approximates the amounts allegedly owed to Plaintiffs for unpaid overtime compensation, based on Defendant's payroll records. The Agreement takes into account Plaintiffs' burden to recover liquidated damages, which would require them to prove not only the merits of their overtime claim, but also to rebut Defendant's assertion that it acted in good faith. *See* 29 U.S.C. §§ 216(b), 260 (stating that an employee can recover unpaid overtime compensation plus an equal amount as liquidated damages, but that the

9

court may decline to award such liquidated damages where the employer shows that the act or omission giving rise to such action was in good faith and that there were reasonable grounds for believing that the act or omission was not a violation). Plaintiffs will also receive an additional sum under the Agreement for costs and reasonable attorneys' fees, which fully satisfies any and all obligations they have to their attorneys for the payment of fees and expenses. Essentially, Plaintiffs are receiving a nearly complete recovery of their claimed unpaid overtime wages, plus their attorneys' fees, while only forgoing their potential liquidated damages claim.

## V.     CONCLUSION

The proposed settlement is a judicious and reasonable conclusion to this *bona fide* dispute, with a resolution fairly and satisfactorily concluding the proceedings. For the foregoing reasons, the Court should grant the Parties' Joint Motion for Preliminary Approval of Settlement and Conditional Certification for Settlement Purposes Only in its entirety and enter the accompanying proposed Preliminary Approval Order.

[Signature block on following page]

Respectfully submitted,

s/ Amy L. Gaffney
Amy L. Gaffney (FID 6316)
Gaffney, Lewis & Edwards, LLC
3700 Forest Drive, Ste 400
Columbia, SC 29204
(803) 790-8838
(803) 790-8841 – facsimile
agaffney@glelawfirm.com

YARBOROUGH APPLEGATE LLC
David B. Yarborough, Jr. (FID 7336)
William E. Applegate, IV (FID 9261)
Christopher J. Bryant (FID 12538)
291 East Bay Street
Charleston, SC 29401
(843) 972-0150
(843) 277-6691 – facsimile
david@yarboroughapplegate.com
william@yarboroughapplegate.com
chris@yarboroughapplegate.com

*Attorneys for Plaintiffs*

s/ J. Hagood Tighe
J. Hagood Tighe (FID 6506)
Benjamin P.J. Dudek (FID 12583)
FISHER & PHILLIPS LLP
1320 Main Street, Suite 750
Columbia, South Carolina 29201
Telephone: (803) 255-0000
Facsimile: (803) 255-0202
htighe@fisherphillips.com
bdudek@fisherphillips.com

Kathleen McLeod Caminiti
(*Pro Hac Vice* Application Pending)
FISHER & PHILLIPS LLP
430 Mountain Avenue, Suite 303
Murray Hill, NJ 07974

Matthew R. Simpson
(*Pro Hac Vice* Application pending)
FISHER & PHILLIPS LLP
1075 Peachtree Street, NE
Suite 3500
Atlanta, GA 30309

*Attorneys for Defendant*

Dated this 16th day of March 2018.

11